NOT FOR PUBLICATION                                          CLOSED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

LAURIE O'REILLY,                          :
                                          :      Civil Action No. 04-5787 (FSH)
            Plaintiff,                    :
                                          :
      v.                                  :      **OPINION**
                                          :
RUTGERS, THE STATE UNIVERSITY             :
OF NEW JERSEY,                            :      January 19, 2006
                                          :
            Defendant.                    :
                                          :

---

**HOCHBERG, District Judge:**

       This matter comes before the Court upon the parties' cross-motions for summary

judgment.  The parties ask the Court to determine whether an employee claiming FMLA leave

can dictate which individuals within her company may review the medical certification form

supporting her claim of leave.  This Court has carefully considered the written submissions of the

parties pursuant to Fed. R. Civ. P. 78.

**I.       Uncontested Facts** [1]

       Plaintiff Laurie O'Reilly ("Ms. O'Reilly" or "Plaintiff") is a former employee of Rutgers

University ("Rutgers"or "the University").  In 1999 she was assigned by the University to the

Interregional Research Project No. 4, Center for Minor Crop Pest Management ("IR-4") as a

Project Assistant, and was later promoted to Project Associate.  By the fall of 2002, Ms. O'Reilly

was having a difficult time maintaining her core work hours on a regular and continuing basis.

---

[1] This summary of the case's factual background consists of facts taken from Plaintiff's
Brief and Statement of Uncontested Facts and facts taken from the Defendant's Statement of
Uncontested Facts which Plaintiff adopted or to which Plaintiff interposed no objections in her
submissions.

Ms. O'Reilly explained to her immediate supervisor, Ms. White, that she needed flexibility in her schedule because she was taking medication.  Ms. O'Reilly, upon Ms. White's suggestion, provided her supervisors with a doctor's note but would not discuss the time frame for her flexible schedule nor whether a re-evaluation would be appropriate at a future date.

In the first week of 2003, Ms. O'Reilly called Ms. White on five separate occasions to notify her that she was sick and would not be coming to work.  On January 10, 2003, Ms. O'Reilly spoke with Ms. White and advised that she was going to request leave under the Family and Medical Leave Act ("FMLA").  By letter of January 10, 2003, Ms. White asked Ms. O'Reilly to provide information about what prevented her from reporting to work, but specifically said that "no diagnosis [was] necessary."  On January 13, 2003, Ms. O'Reilly confirmed her request for FMLA leave in a letter to Ms. White and on the same day Dr. Robert Holm, Executive Director of IR-4, notified Ms. O'Reilly by letter that she would be placed on FMLA leave effective January 7, 2003, contingent on her completing and returning to him the U.S. Department of Labor Certification of Health Care Provider ("HCP Certification").  Dr. Holm advised Ms. O'Reilly that there would be no basis to approve her continuing leave if she did not return the HCP certification on or before January 28, 2003.

On January 31, 2003, after having reminded Ms. O'Reilly by letter on January 24th that her HCP certification was due to him on the 28th and having received no certification on that date, Dr. Holm wrote to Ms. O'Reilly again.  He granted her an extension until February 5, 2003 and reminded her that unless he received the certification on that date, he would have no basis to continue her leave of absence and her employment at Rutgers would be terminated.  Ms. O'Reilly wrote to Rutgers' Office of Employee Relations on January 28, 2003, asking which department at

Rutgers was entitled to review her medical records.  Mr. Jeff Maschi, an Employee Relations Specialist in the office, responded to Ms. O'Reilly on February 3, 2003, explaining that she had to return the HCP certification to her department, who, he explained, "is responsible for keeping the certification confidential and separate from other files."  On the same day, Ms. O'Reilly e-mailed Dr. Holm, citing the advice of her attorney that she was "under no obligation to provide to [her] immediate supervisors [her] confidential medical record."  Despite several more rounds of correspondence between Ms. O'Reilly, Dr. Holm, and Mr. Maschi, Ms. O'Reilly did not produce the HCP certification by the February 5, 2003 deadline.

On February 21, 2003, Dr. Holm notified Ms. O'Reilly by letter that he was considering terminating her employment and scheduled a conference with Ms. O'Reilly on February 27, 2003 to give her an opportunity to respond.  Ms. O'Reilly appeared at the February 27, 2003 meeting with a tape recorder, but left when told that she could not record the meeting.  On February 28, 2003, Dr. Holm sent a letter to Ms. O'Reilly terminating her employment.

On October 7, 2004, Ms. O'Reilly filed a complaint in the Superior Court of Middlesex County, which Rutgers then removed to this Court on November 23, 2004.  Count I of the Complaint alleges that Rutgers violated the FMLA by denying Ms. O'Reilly's leave request after demanding that she submit a medical certification to her supervisor rather than allowing her to submit it to Rutgers' medical staff for approval.  Count II alleges that Rutgers violated Ms. O'Reilly's privacy rights by requiring that she provide her managers with medical verification for her leave.[2]  Plaintiff now moves for summary judgement as to liability on Counts I and II and the

---

[2] Count III, as described by Plaintiff in her summary judgment brief, "is an offshoot of Counts I and II and has no independent viability."  Pl.'s Br. at 5.

University cross-moves for summary judgment.

## II.    Standard

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).  A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 (1986); *In re Headquarters Dodge*, 13 F.3d 674, 679 (3d Cir. 1993).

All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).  The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323.  This requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the non-moving party has not shown the requisite facts relating to an essential element of an issue for which it bears the burden. *See id.* at 322-23.

Once the party seeking summary judgment has carried this initial burden, the burden shifts to the non-moving party.  To avoid summary judgment, the non-moving party must

4

demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial.  *Miller*, 843 F.2d at 143; *see also Celotex Corp.*, 477 U.S. at 324.

If a moving party satisfies its initial burden of establishing a *prima facie* case for summary judgment, the opposing party "must do more than simply show that there is some metaphsyical doubt as to material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Id.* at 587 *(quoting First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968))

The standards under which this Court grants or denies summary judgment control even in a case such as this one where cross-motions have been filed.  *Weissman v. U.S. Postal Serv.*, 19 F. Supp. 2d 254, 259 (D.N.J. 1998).  Here the material facts of the case are not in dispute and the question before the court is purely legal.  *See, e.g., McGowan v. NJR Serv. Corp.*, 423 F.3d 241, 243-44 (3d Cir. 2005) (where cross-motions for summary judgment asked the court to determine retirement plan administrators' duties under ERISA, and the material facts of the case were not in dispute, the issue presented was purely legal); *see also Whitney v. Wal-Mart Stores, Inc.*, 2003 WL 22961210 (D. Me. Dec. 16, 2003) (on cross-motions for summary judgment, if there are no genuine issues of material fact, one party is entitled to judgment as a matter of law).

## III.   Discussion

### 1.   FMLA Infringement Claim

The Family and Medical Leave Act ("FMLA") was enacted in 1993 "to provide leave for workers whose personal or medical circumstances necessitate that they take time off from work

in excess of what their employers are willing or able to provide." *Parker v. Hahnemann Univ. Hosp.*, 234 F. Supp. 2d 478, 483 (D.N.J. 2002) (citations omitted).  In an effort to balance the interests of employers and employees, the FMLA authorizes employers to require employees seeking leave to provide documentation substantiating their need for the leave.  Specifically, "[a]n employer may require that a request for leave be supported by a certification issued by the heath care provider of the eligible employee . . . The employee shall provide, in a timely manner, a copy of such certification to the employer."  29 U.S.C.A. § 2613(a).  An employee who fails to provide her employer with such a certification is not entitled to leave under the FMLA.  29 C.F.R. § 825.312(b) ("[i]f an employee fails to provide in a timely manner a requested medical certification to substantiate the need for FMLA leave due to a serious health condition, an employer may delay continuation of FMLA leave until an employee submits the certificate. . . . If the employee never produces the certification, the leave is not FMLA leave.").

The parties in this case do not dispute the material facts surrounding Ms. O'Reilly's request for leave and the fact that she did not provide Rutgers with the required health care provider certification prior to her termination.   The question before the Court is whether Rutgers was permitted by the FMLA to require Ms. O'Reilly to submit her certification to her department supervisor or manager rather than to the Rutgers' medical staff for approval.

Ms. O'Reilly contends that Rutgers "interfered with her right to have FMLA leave by demanding that she provide her confidential medical certificate to her department supervisor and manager."  Pl.'s Br. at 14.[3]   Section 2615(a)(1) of the FMLA makes it "unlawful for any

---

[3] Plaintiff's summary judgment brief also alleges, for the first time, a claim for retaliation under the FMLA.  Section 2615(a)(2) of the FMLA protects employees from suffering discrimination because they have exercised their rights under the Act.  *See* 29 U.S.C.A. § 2615

employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right

provided under . . . [the FMLA.]"  29 U.S.C.A. §2615(a)(1).  To prove an interference claim, a

plaintiff must establish:  (1) that she is an eligible employee under the FMLA; (2) that the

defendant is an employer subject to the requirements of the FMLA; (3) that plaintiff was entitled

to leave under the FMLA; (4) that she gave notice to defendant of her intention to take FMLA

leave; and (5) that the defendant denied her the benefits to which she was entitled under the

FMLA.  *See Parker*, 234 F. Supp. 2d at 484.  Plaintiff has met the first, second and fourth

elements of an interference claim; it is the third and fifth elements–entitlement to leave under the

FMLA and that defendant denied her benefits to which she was entitled under the FMLA–that

raise the legal issue before the Court.

      A.    *Entitlement and Alleged Denial of Benefits*

Ms. O'Reilly claims she was entitled to FMLA leave because she was willing to provide

her medical certification to licenced medical professionals at Rugters.  Rutgers, however,

required that Ms. O'Reilly submit her form to her department head pursuant to its general policy

whereby each department functions as an employer with regard to many aspects of personnel

administration.

Section 2613(a) of the FMLA authorizes employers to require that requests for leave be

---

(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate
against any individual for opposing any practice made unlawful by this subchapter.").  The
retaliation theory of recovery under the FMLA is separate from the interference theory and
involves a separate system of proof.  *See Parker*, 234 F. Supp. 2d at 488 (describing the burden-
shifting framework applied to retaliation claims).   Plaintiff did not raise a retaliation claim in the
Final Pretrial Order as one of her legal issues, nor does it appear in her initial Complaint.
Because Plaintiff did not preserve this claim in the final pretrial order, it is waived.  *Basista v.
Weir*, 340 F.2d 74, 84 (3d Cir. 1965) (holding "a Pretrial Order when entered limits the issues for
trial and in substance takes the place of pleadings covered by the Pretrial order.")

supported by a certification but does not specify who within the employing organization is authorized to request and review such a certification.  In fact, the term "employer," as defined by the FMLA, "means any person engaged in commerce . . . *includ[ing] any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer*." 29 U.S.C.A. § 2611 (emphasis added).  This definition may certainly encompass departmental managers and supervisors who function in an administrative capacity, as well as individuals in an office of employee relations or human resources.  *See, e.g.*, *Cash v. Smith*, 231 F.3d 1301, 1303-04 (11th Cir. 2000) (print shop supervisor in the graphics department of power company was responsible for processing FMLA paperwork in order to determine whether employee qualified for FMLA leave); *Dodge v. Trustees of the National Gallery of Art*, 326 F. Supp. 2d 1, 6 (D.D.C. 2004) (gallery policy provided that employee's immediate supervisor was the primary and initial contact for employees requesting FMLA leave).

Ms. O'Reilly argues that Rutgers has interfered with her benefits under the FMLA by violating the U.S. Department of Labor Regulation 29 C.F.R. § 825.500(g).  The regulation states that:

> Records and documents relating to medical certifications . . . shall be maintained as confidential medical records in separate files/records from the usual personnel files . . . except that (1) supervisors and managers may be informed regarding necessary restrictions on the work or duties of an employee and necessary accommodations.

Section 825.500(g) falls within a section of the CFR that addresses "what records must an employer keep to comply with the FMLA."  Although the regulation deals explicitly with document retention requirements under the FMLA, Plaintiff contends that it also prohibits managers and supervisors from reviewing FMLA requests and accompanying HCP certifications

8

in the first instance.  A plain reading of the regulation suggests, however, that it merely allows employers to exempt supervisors and managers from the regulation's confidentiality requirements in certain circumstances where those individuals are not already privy to an employee's medical information through the leave approval process.  This reading is supported by the case law.  *See, e.g.*, *Kitts v. Gen. Tel. N., Inc.*, No. 04-173, 2005 WL 2277438 at * 13 (S.D. Ohio Sept. 19, 2005) ("While employers may enact policies restricting who, within the company, may have access to that information [about employees' health conditions], *nothing in the FMLA imposes a similar restriction.*") (emphasis added).

The cases offered by Plaintiff in support of her reading do not argue otherwise.  Two of the cases stand for the general proposition that improper disclosure of confidential medical information does not give rise to a cause of action under the FMLA (or ADA) without the existence of a tangible injury.  *See Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 519 (3d Cir. 2001) (rejecting employee's claim based on violations of the ADA's record-keeping provisions where the plaintiff did not identify a single person who improperly viewed his medical files); *Johnson v. Moundsvista, Inc.*, No. Civ. 01-915, 2002 WL 2007833 (D. Minn. Aug. 28, 2002) (holding that even *if* a private right of action exists under Section 825.500(g), such a claim would require showing a "tangible injury" resulting from the disclosure of plaintiff's medical information).  These cases do not hold that Section 825.500(g) permits a claimant to bar managers and supervisors from reviewing FMLA requests and employees' HCP certifications.

The third case, *Doe v. United States Postal Services*, is inapposite; unlike the plaintiff in *Doe*, Ms. O'Reilly never suffered from public disclosure of her medical information.  In *Doe*, an employee alleged that Postal Service officers improperly disclosed to co-workers medical

9

information contained in his FMLA certification form in violation of the Privacy Act and the

Rehabilitation Act.  317 F.3d 339, 340-41 (D.C. Cir. 2003).[4]  The court rejected the Postal

Service's argument that the plaintiff could have avoided disclosing his medical condition by

forgoing his statutory entitlement to FMLA leave.  *Id*. at 344.  It concluded that such a view, if

accepted, "would force employees to choose between waiving their right to avoid being publicly

identified as having a disability and exercising their statutory rights."  *Id*.  Unlike Doe, Ms.

O'Reilly cannot establish unauthorized disclosure of her HCP certification or the information

contained in it because she never submitted the certification to anyone in her Department.

Furthermore, Ms. O'Reilly did not have to chose between being publicly identified as having a

disability and exercising her statutory rights.  Rather she was asked to comply with the

requirements of the FMLA by submitting her HCP certification to her Department head, an action

that would not have exposed her condition to anyone beyond Dr. Holm, Dr. Jerry Baron

(Associate Director of IR-4) and Ms. Sherry Nagahiro (the IR-4 department administrator).[5]

      In sum, Ms. O'Reilly has offered no persuasive authority to suggest that Rutgers violated

the FMLA by requiring Ms. O'Reilly to submit her HCP certification to her Department head,

rather than allowing her to submit that information to separate medical staff at Rutgers.

Plaintiff's fear that her medical information might be wrongfully disclosed does not permit her to

refuse to submit her HCP form to her employer.  Nothing has been adduced to suggest any

---

[4] The court ultimately remanded the case after finding that a genuine issue of material fact existed as to whether Postal Service officials disclosed information retrieved from the plaintiff's FMLA leave request form.

[5] According to Dr. Holm, Dr. Baron is responsible for maintaining all records related to IR-4 personnel and stores such records in a locked file cabinet, in a locked closet, in his locked office.

intention by the University to disclose the information wrongfully, had it been submitted. Having refused to provide her employer with her medical certification, Ms. O'Reilly was not entitled to FMLA leave.[6]  *See* 29 C.F.R. § 825.312(b)

Nor can Plaintiff show that she was denied any other benefit to which she was entitled under the Act.  *See, e.g.*, *Kitts*, 2005 WL 2277438 at *13 (finding allegations insufficient to support an interference claim under the FMLA, even where defendant allegedly compelled plaintiff to disclose privileged medical information to unauthorized personnel, because FMLA does not provide employees with a general right to privacy); *Whitney v. Wal-Mart Stores, Inc.*, No. 03-65-P-H, 2003 WL 22961210, * 10 (D. Me. Dec. 16, 2003) (finding no legal authority for the proposition that invasion of an employee's medical privacy may serve as a basis for an interference claim under the FMLA).  Ms. O'Reilly has set forth no legal basis that Rutgers interfered with any FMLA rights under Section 2615(a)(1) of the Act.

2.     Constitutional Right to Privacy

Ms. O'Reilly  alleges, in the second count of her Complaint, that Rutgers violated her "rights of privacy" by demanding that she "provide line management with medical verification of her illness."  She expands only briefly on this claim in her brief for summary judgment, contending that medical records fall within the zone of privacy protected by the Constitution, that her psychiatrist's medical certification is a medical record, and that by requiring her to submit the certification to her supervisor, Rutgers violated her constitutional right to privacy.

--------

[6]  Because the Court finds that Ms. O'Reilly was not entitled to FMLA leave, the Court does not reach the question, raised by Rutgers, of whether Ms. O'Reilly would have been able to return to work after 12 weeks of FMLA leave, had she in fact met the requirements for that leave.

The Supreme Court has recognized that the Constitutional right to privacy extends to protect an individual's interest in avoiding disclosure of personal matters. *Whalen v. Roe*, 429 U.S. 589, 599 (1977). The Court also noted, however, that disclosures of private medical information are often necessary and do not always amount an impermissible invasion of privacy. *Id*. at 602. The Third Circuit has followed suit, recognizing that "the right of an individual to control access to her or his medical history is not absolute" and "public health or other public concerns may support access to facts an individual might otherwise chose to withhold." *U.S. v. Westinghouse*, 638 F.2d 570, 578 (3d Cir. 1980).

Under the rule of *Westinghouse*, this Court must consider several factors in deciding whether Rutgers violated Ms. O'Reilly's privacy rights. Whether a constitutional violation occurred depends on

> the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Westinghouse*, 638 F. 2d at 578 (holding that the strong public interest in occupational safety embodied in the comprehensive statutory scheme of OSHA, along with effective procedures for safekeeping of records, outweighed the minimal intrusion into the privacy that surrounds employee medical records).

First, the type of record requested here, the HCP certification, is limited in scope and far less detailed than the medical records considered by the court in *Westinghouse*. According to the governing regulation, an employee's health care provider must certify (1) which part of the

12

definition of "serious health condition," if any, applies to the patient's condition, and (2) the medical facts which support the certification, including a brief statement as to how the medical facts meet the criteria of the definition.  29 C.F.R. § 825.306.  The certification need not include a diagnosis nor any other "unnecessary information."  *See* 60 Fed. Reg. 2222.

Second, Rutgers has effective security provisions in place so that Ms. O'Reilly's HCP certification form, had she submitted it, would be protected against subsequent unauthorized disclosure.  Only two individuals in Ms. O'Reilly's department, the Associate Director of the IR-4 and the department administrator, have regular access to the department's personnel records, which are kept in a locked file cabinet, in a locked closet, in a locked office.  In addition, Rutgers is bound by 29 C.F.R. § 825.500 to retain any records and documents relating to Ms. O'Reilly's medical certification as confidential medical records, separate from other personnel records. *See* Klausner Cert., Exh. O [at Appendix E, n.6] (University Guidelines state that certifications to support the need for FMLA leave "MUST BE KEPT CONFIDENTIAL and separate from other files.  One way to assure confidentiality is to keep each employee's certification(s) in a sealed envelope within the file but marked that it contains confidential information.").  The limited access and tight security practiced by Rutgers are more than sufficient to protect the information contained in Ms. O'Reilly's HCP certification.

Third, the FMLA specifically authorizes employers to request HCP certifications from employees seeking leave under the Act.   This express statutory mandate is precisely the kind that will weigh in favor of access and against a finding of privacy violation.  29 U.S.C.A. § 2613(a). In fact, an employee's decision to submit her medical history in support of her FMLA claim may be considered a waiver of her right to complete confidentiality.  *See Dodge*, 326 F. Supp. 2d at 17

13

(finding that by submitting his son's medical records plaintiff "essentially waived his right to keep those records confidential from his supervisor in reviewing the plaintiff's FMLA status").

These factors, taken together, outweigh any potential harm to Ms. O'Reilly or to her relationship with her doctor, which might result from disclosure of her HCP certification. No evidence has been adduced upon which a reasonable jury could conclude that the limited information contained in Ms. O'Reilly's HCP would be of such a high degree of sensitivity that its disclosure could be considered a severe intrusion on her privacy. Furthermore, no evidence has been shown that Ms. O'Reilly's relationship with her doctor would suffer upon disclosure of her HCP certification.

In sum, after considering the *Westinghouse* factors, there is no basis upon which a reasonable jury could find that the University violated Ms. O'Reilly's constitutional right to privacy by requiring her to return her HCP certification to her department head.

## IV.    CONCLUSION

There is no genuine dispute as to any of the material facts at issue in this case, and this Court finds no evidence upon which a reasonable jury could conclude that Defendant interfered with Plaintiff's rights under the FMLA or the United States Constitution. Rutgers' motion for summary judgment is granted and Ms. O'Reilly's motion for summary judgment is denied. An appropriate order will issue.

/s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.